## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

James G. Mermigis, Esq.
**THE MERMIGIS LAW GROUP, P.C.**
85 Cold Spring Road, Suite 200
Syosset, New York  11791
516-353-0075
James@MermigisLaw.com

*Attorneys for Plaintiffs*

——————————————————————X

**JOSEPH BORELLI,** Individually and as Parent and
Natural Guardian of J.B., **JANET NICHOLS,** Individually
and as Parent and Natural Guardian of J.N., **MARIA
HART,** Individually and as Parent and Natural Guardian
of C.H., A.H. and J.H., **ERIN ULITTO,** Individually and
as Parent and Natural Guardian of L.U., **CRYSTAL J.
LIA,** Individually and as Parent and Natural Guardian of F.L.,
C.L. and G.L., and. **MICHELLE BAIONE,** Individually
and as Parent and Natural Guardian of R.B. and C.B.,                  **COMPLAINT**

                                    Plaintiffs,                  Civil No.:

Against

**BILL de BLASIO**, in his Official Capacity as Mayor of the
City of New York, **DR. DAVID CHOKSHI**, in his Official
Capacity of Health Commissioner of the City of New York,
**NEW YORK CITY DEPARTMENT OF EDUCATION,**
**RICHARD A. CARRANZA,** in his Official Capacity as
Chancellor of the New York City Department of  Education
and **THE CITY OF NEW YORK,**

                                     Defendants.

——————————————————————X

       **"In these days, it is doubtful that any child may reasonably succeed in life if he is
denied the opportunity of an education."** *Brown v. Board of Ed.*, 347 U.S. at 493.

Plaintiffs, by their attorneys, **The Mermigis Law Group, P.C.**, for their Complaint against Defendants Mayor Bill de Blasio ("Mayor"), Dr. David Chokshi ("Chokshi"), New York City Department of Education ("NYCDOE"), Richard Carranza ("Carranza") and the City of New York ("NYC"), allege as follows:

## NATURE OF THIS ACTION

1.      This civil action challenges the blatant abuse of discretion by Defendant Mayor Bill de Blasio, Defendant New York City Department of Education, Defendant Richard A. Carranza and Defendant Dr. David Chokshi and the unconstitutional, random and arbitrary shutdown of New York City Public Schools on Thursday, November 19, 2020 and sending 1.1 million students packing and back into remote learning.

## INTRODUCTION

2.      In the early months of 2020, the Center for Disease Control ("CDC") identified cases of a virus, Covid-19, that were a threat to the citizens of the United States.

3.      Within short weeks, governing leaders started to act to protect the public and, with input from the Center for Disease Control, took action to shut down public life in an unprecedented way for the American people.

4.      Initially, in the State of New York and the City of New York, residents were told the reason they were being ordered to stay home was to "flatten the curve."

5.      Residents were warned about the threat of the covid-19 virus and advised that the reason they were being ordered not to convene for a "short period of time" was to "flatten the curve" of those who would contract the virus and limit the populations of those needing and seeking help from hospitals so that hospitals would not be overwhelmed by those affected with the virus.

6.      In fact, the "curve" was flattened by the middle of May as those dying of covid-19 plummeted in number causing policy makers to stop reporting the mortality rates and instead start to report the number of those who had contracted the virus.

7.      In fact, of the approximately 200,000 deaths in the U.S., only six (6%) had covid-19 as the only cause mentioned. Ninety-four percent (94%) of covid-19 victims had an average of 2.6 co-morbidities.[1]

8.      Even though the curve was flat, restrictions have remained.

9.      The mortality rate for children, young adults and those up to 45 years of age is mathematically nearly zero percent.[2]

10.      Schools have re-opened in September subject to crippling rules being arbitrarily ordered by Defendants with no scientific basis for formulating said rules.

---

[1] CDC Weekly Updates by Demographic and Geographic Characteristics, 8/19/20.

[2] The Washington Examiner, Stanford Doctor: Coronavirus fatality rate for people under 45 "almost zero."

11.     After abruptly closing schools in March 2020, essentially costing most children months of valuable education, Defendants have now shutdown the NYC Public School system and. they are again subjecting children to isolating and ineffective remote learning, putting children at risk for further academic stagnation or loss of skills and giving rise to significant mental health risks.

12.     Defendants announced that NYC Public Schools would close on November 19, 2020, for in class learning and all NYC Public School students would be subject to remote learning.

13.     Defendants closed schools despite the fact that the NYC Infection Rate has averaged 2.5% over the last seven days and 2.4% on Wednesday, November 18 and 2.4% on Thursday, November 19, 2020.[3]

14.     Over the last seven days, NYC has outperformed the Statewide averages in % positive tests per day (2.5% v. 2.9%), New cases per 100k average (20.56 v. 24.63) and Gross New Hospitalizations per 100k (1.27 v. 1.56).[4]  According to the data, NYC is outperforming most of the State including Long Island, Mid-Hudson, Western New York, Central New York, Finger Lakes and the Mohawk Valley region.[5]

---

[3] forward.ny.gov Percentage Positive Rates NYC Region

[4] id.

[5] id.

15.    Defendants' arbitrary actions will deprive Plaintiffs' children, and all New York City school children, of the opportunity for a meaningful education, including appropriate academic instruction and social/emotional growth and support, all of which are critical to ensure success later in life. Hence, Defendants' arbitrary and capricious actions put at risk the futures of an entire generation of New York City children and have long term implications for economic stability in the state, which already has been decimated by Defendant de Blasio's lockdown orders.

16.    As of 8/30/20, not a single person in New York in the age group 5-17 years died of covid-19.[6]

17.    Covid-19 deaths are declining in New York and there is NO evidence supporting a substantial risk to children or to teachers.

18.    There is no evidence that school aged children are at risk of covid-19 in a school setting, any more than they are elsewhere in the community.

19.    There is no evidence that students transmit covid-19 to teachers or adults in a school setting or elsewhere in the community.

20.    The infection fatality ratio of children between 0-19 years old is .00003%.[7]

---

[6] health.ny.gov

[7] cdc.gov

21.     Governor Cuomo on November 16, 2020 said the following, "Schools are actually the safe place. The infection rates in schools is much lower than the rest of the city and the rest of the community.  We should leave the children in the schools rather than have them run around the streets where the infection rate is five times as high."[8]

22.     The city established a 3% threshold for infection rates over the summer prior to opening schools.

23.     One of the Mayor's emergency advisers, Dr. Irwin Redlener said the mayor's reason for closing the public schools was arbitrary. "In the end, it was pretty arbitrary on how they came up with 3 percent and not based on any science. The number was chosen as a compromise."[9]

24.     According to the New York Times, there have been only few dozen positive cases in a schools system with 1.1 million students in 1,800 schools spread out over the five boroughs.[10]

25.     CDC Director Dr. Robert Redfield said they do not recommend closing schools. Redfield stated that research shows that covid-19 was not acquired at schools. [11]

_____

[8] November 16, 2020,  Governor Cuomo guest on MSNBC's Morning Joe.

[9] nbcnews.com, November 19, 2020.

[10] id.

[11] c-span.org, November 19, 2020

26.     CDC Director Dr.  Robert Redfield stated that schools are among the safest places for children to be during the coronavirus pandemic and further stated that "there is extensive data that confirms….K-12 schools can operate with face-to-face learning and they can do it safely and responsibly."[12]

## PARTIES

27.     Plaintiffs are parents of children who are enrolled in public school and whose right to an education, right to literacy, due process, and equal protection were violated on November 19, 2020 by Defendants' Order to shutdown NYC Public Schools, which is harming children and depriving them of their fundamental rights.

28.      Plaintiff City Council member Joseph Borelli is the parent of J.B., age 5, who was attending P.S. 55R on Staten Island, New York and is now shutdown from attending *in person* classes.

29.     Plaintiff Janet Nicholls is the parent of J.N., age 17, who was attending Tottenville High School on Staten Island, New York, and is now shutdown from attending *in person* classes.

30.     Plaintiff Maria Hart is the parent of C.H. and A.H., who was attending Tottenville High School and J.H., who was attending IS34 on Staten Island, New York, and are both shutdown from attending *in person* classes.

_____
[12] id.

7

31.     Plaintiff Erin Ulitto is the parent of L.U., who was attending 1st grade at P.S. 1 in Staten Island, New York and has now been shutdown from attending *in person* classes.

32.     Plaintiff Crystal J. Lia is the parent of G.L., C.L. and F.L., all of whom were attending P.S. 36 on Staten Island, New York and now have been shutdown by the Defendants.

33.     Plaintiff Michelle Baione is the parent of R.B. and C.B., whom were attending P.S. 36 on Staten Island, New York and now have been shutdown by the Defendants.

34.     Remote learning puts Plaintiffs' children at a complete disadvantage as compared to other like students in the state of New York and throughout the country. As long as there is remote learning in New York City, Plaintiffs. will continue to suffer irreparable harm in this critical stage of their children's development.

35.     Defendant Bill de Blasio is the Mayor of the City of New York and has issued a series of executive orders and guidance since the COVID-119 pandemic began, including the shutdown of NYC public schools. The Mayor is being sued in his official capacity.

36.     Defendant Richard A. Carranza is the Chancellor of the New York City Department of Education and is being sued in his official capacity.  Among other things, the New York City Department of Education issued its directives, and subsequent updates and supplemental guidance on instruction for the 2020-21 school year with recommendations from

the New York City Department of Health. Defendant Carranza is responsible for enforcing

education law and regulations in the City of New York.

37.     Defendant David Chokshi, is the Commissioner for the New York City

Department of Health and is being sued in his official capacity.  Among other things, Defendant

David Chokshi and the New York City Department of Health provide recommendations and/or

consultations to Defendant de Blasio and the New York City Department of Education overseen

by Defendant Carranza.

## JURISDICTION & VENUE

38.     This action arises under 42 U.S.C. § 1983 in relation to Defendants' deprivation

of Plaintiff's constitutional rights to due process and equal protection rights under the Fifth and

Fourteenth Amendments to the U.S. Constitution. Accordingly, this Court has federal question

jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested

declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28

U.S.C. § 1343(a) and 42 U.S.C. § 1983; and attorneys' fees and costs under 42 U.S.C. § 1988.

39.     The Court has jurisdiction over Plaintiffs' federal law claims under 42 U.S.C. §

1331 and 28 U.S.C. § 1343.

40.     The Court has jurisdiction over Plaintiffs' supplemental state court claims under

28 U.S.C. 1367.

41.     Venue is proper in the Southern District of New York under 28 § 1391(b) in that a

substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

42.     This lawsuit presents challenges the Defendants' shutdown of New York City

public schools on November 19, 2020.

43.     This Action is brought pursuant to 42 U.S.C. § 1983, on the grounds that

Defendants' order, and Defendants' enforcement of the order, violate the rights of Plaintiffs and

their children protected by the U.S. Constitution, the New York State Constitution, including

specifically: (1) the right to substantive due process pursuant to Article 14 of the  U.S.

Constitution; (2) the right to equal protection, free from arbitrary treatment by the State (U.S.

Const. amend. XIV);(3) the right to receive in-person public education pursuant to the New York

Constitution, Art. XI, Sec. I.

44.     It is critical that the Court act now to ensure that students' fundamental rights to

literacy and to a minimum education are protected from Defendants' arbitrary, capricious, and

mentally harmful actions and so that students are able to safely return to their classrooms, as

supported by science and fact.

45.     In words as true today as they were when written in the landmark 1954 *Brown v.*

*Board of Education* decision, United States Supreme Court Chief Justice Earl Warren stated:

Today, education is perhaps the most important function of state and local governments. In these

days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied

the opportunity of education. Such an opportunity, where the state has undertaken to provide it, is

a right which must be made available to all on equal terms.  347 U.S. 483, 491 (1954).

46.     However, New York City students, of which there are well over a million in public schools alone, were deprived of the real essence of an education on November 19, 2020, by draconian measures taken by the Defendants driven by special interest agendas and fear, not science. And even worse, many of these children will suffer short- and long-term mental health and social and emotional harm as a result of the shutdown of schools.

47.     Remote learning also presents significant risks to students mental health and academic success. Remote learning was shown to be largely unsuccessful this past Spring when New York State abruptly closed all schools. Remote learning deprives students of the opportunity to interact personally with teachers and to learn collaboratively with peers.

48.     The illness caused by this virus, COVID-19, manifested in a variety of ways including respiratory disease. Across the United States and in New York City, deaths and the most severe illnesses were largely limited to the elderly and those with underlying chronic medical conditions.  These individuals are, unfortunately, most vulnerable to almost all illnesses. COVID-19 appears to have a minimal impact on school-aged children and school-aged children also appear to not easily spread the virus to other children or to adults..

49.     The shutdown of New York City Public Schools are wildly disproportionate to demonstrable scientific evidence and  will likely cause physical and emotional harm to thousands

of New York City students. Said shutdowns will put children at grave risk of long-term

psychological and even potentially physical harm.

## COVID-19 IN SCHOOL CHILDREN REPORT

50.     Finally, there was an important report titled covid-19 in school children which

examined school reopening procedures and policies in Finland and Sweden. See Attached as

Exhibit A, *Covid-19 in schoolchildren, A comparison between Finland and Sweden.*

51.     This report was a comparison between Finland and Sweden, two in many ways

similar countries who applied different measures regarding schools during the covid-19

pandemic.

52.     There was no difference in the overall incidence of the laboratory confirmed

covid-19 cases in the age group 1-19 years in the two countries and the number of laboratory

confirmed cases does not fluctuate with school closure or change in testing policy in Finland.

53.     In Sweden, the number of laboratory confirmed cases is affected by change in

testing policy. Severe covid-19 disease as measured in ICU admittance is very rare in both

countries in this age group and no deaths were reported.

54.     Outbreak investigations in Finland had not shown children to be contributing

much in terms of transmission and in Sweden a report comparing risk of covid-19 in different

professions, showed no increased risk for teachers.

55.     In conclusion, closure or not of schools had no measurable direct impact on the number of laboratory confirmed cases in school-aged children in Finland or Sweden. The negative effects of closing schools must be weighed against the positive indirect effects it might have on the mitigation of the covid-19 pandemic.

56.     The report found that the closure or opening of schools had no measurable direct impact on the number of laboratory confirmed cases in school-aged children in Finland or Sweden.

## STATEMENT OF FACTS

57.     On March 7, 2020, Governor Cuomo, signed executive order 202, which declared a state of disaster emergency for the State of New York.

58.     The lockdowns then imposed by the Governor and Defendant de Blasio  in response to the Covid-19 pandemic are unprecedented and have never been used before in response to any other disease in our history.

59.     Broad population-wide lockdowns are such a dramatic inversion of the concept of liberty in a free society as to be nearly presumptively unconstitutional unless the government can truly demonstrate that they burden no more liberty than is reasonably necessary to achieve an important government end.

60.     What were initially billed as temporary measures necessary to "flatten the curve" and protect hospital capacity have become open-ended and ongoing restrictions aimed at a very

different end- stopping the spread of an infectious disease and preventing new cases from

arising- which requires ongoing and open-ended efforts.

61.     As part of the shutdown, New York City schools were shut down in March.

62.     New York recognizes the fundamental right to public education in a classroom

setting. The New York Constitution plainly states: The Legislature shall provide for the

maintenance and support of a thorough and efficient system of free public schools for the

instruction of all the children in the State.   Art. XI, Sec. I.   That school means a physical school

building is confirmed by § three of this same Article, which addresses the provision of

transportation to and from school.

63.     Nonetheless, in direct conflict with the State Constitution, Defendant de Blasio

halted in-person instruction on November 19, 2020.

64.     Chaos has ensued as children, parents, teachers, and school administrators and

staff struggled to provide remote learning access to students across the NYC. At best, remote

learning was inconsistent, but in far too many cases it was tragically disastrous and far too many

students received little or no instruction of value, all while being isolated from friends and

teachers.

**COVID-19 Studies in School-Aged Children**

65.     COVID-19 appears to have a minimal impact on school-aged children and school-aged children also appear to not easily spread the virus to other children or to adults. Nationally, children ages 5 to 17 are hospitalized at a rate of 8.1 per 100,000 population versus 151.7 overall (and 412.9 for those age 65 and over.)[13]

66.     On March 30, 2020, the Australian Research Council released a study that looked at the early data from China, Singapore, South Korea, Japan, and Iran. The study concluded that while SARS-CoV-2 can cause mild disease in children, the data available to date suggests that children have not played a substantive role in the intra household transmission of SARS-CoV-2.35. (See Study attached as Exhibit B.)

67.     On April 3, 2020, the Ministry of Health for British Columbia found that COVID-19 virus has a very low infection rate in children estimated at 1-5% worldwide. (See British Columbia Ministry of Health report attached as Exhibit C.)

68.     Two reports (one originally released on April 26, 2020 and updated July 31, 2020 and the second dated July 31, 2020) from schools in the Australian state of New South Wales (NSW) "each covering a school term found limited spread of COVID-19 in school settings (in

_____

[13] cdc.gov

fact, none in the second term) and found no evidence of children infecting teachers." (See

NCIRS Report attached as Exhibit D.)

69.     This study found that SARS-CoV-2 transmission in children in schools appears

considerably less than the transmission seen for other respiratory viruses, such as influenza.

70.     This data suggests that children are not the primary drivers of COVID-19 spread

in schools or in the community. (See lancet.com Report as Exhibit E.)

71.     On May 18, 2020, during a video conference of ministers of education with the

Council of the European Union, it was reported that since the reopening of schools in 22 member

states, there had been no increase in infections of COVID-19 among students, teachers and

parents.[14]

72.     On May 28, 2020 of Irish school children showed no evidence of secondary

transmission of COVID-19 from the studied children. Noteably, the study included a variety of

settings. These included music lessons (woodwind instruments) and choir practice, both of which

are high-risk activities for transmission. Furthermore, no onward transmission from the three

identified adult cases to children was identified. L. Heaven, *et al.*, No evidence of secondary

transmission of COVID-19 from children attending school in Ireland, 2020, *Euro Surveill.*

2020;25(21), at https://www.eurosurveillance.org/content.

---

[14] washingtonexaminer.com, May 18, 2020.

73.     In a June 2020 study of 1,340 children and adults (parents/relatives and school

staff), scientists from the Institute Pasteur in France, reported that in their study, they found that

infected children did not spread the virus to other children or to teachers or staff. A. Fontanet, *et

al.*, SARS-CoV-2 infection in primary schools in northern France: A retrospective cohort study in

an area of high transmission, (June 23, 2020). (See Study attached as Exhibit F.)

74.     A study of 2,000 German school children and teachers in the state of Saxony

released in July 2020 concluded that schools and young people do not play a significant role in

the transmission of the coronavirus and may even serve as a brake on transmissions. JP Armani,

Anti-SARS-CoV-2 IgG antibodies in adolescent students and their teachers in Saxony, Germany

(SchoolCoviD 19): very low seroprevalence and transmission rates (July 28, 2020). (See German

Study attached as Exhibit G.)

75.     There is also evidence showing that remote learning leads to decreased teacher

interaction with students. *Id.*, at 10 (There are concerning signs that many teachers have had no

contact at all with a significant portion of students . . . only 39% of teachers reported interacting

with their students at least once a day, and most teacher-student communication occurred over

electronic mail, and absenteeism).

76.     Another study showed that, even for children receiving average quality online

learning in the fall of 2020, students would lose three to four months of learning by January

2021.[15]

# CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 " Violation of Due Process under the Fourteenth Amendment"
### Deprivation of Substantive Due Process
### (By All Plaintiffs Against All Defendants)

77.     Plaintiffs and those similarly situated hereby incorporate herein by reference each

and every allegation contained in the preceding paragraphs of this Complaint as though fully set

forth herein.

78.     The Due Process Clause of the Fourteenth Amendment provides that no state shall

deprive any person of life, liberty, or property, without due process of law. U.S. Const. amend

XIV. In particular, the Due Process Clause specially protects those fundamental rights and

liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit

in the concept of ordered liberty, such that neither liberty nor justice would exist if they were

sacrificed. *Glucksberg*, 521 U.S. at 720-21 (internal citations and quotation marks omitted).

Plaintiffs and their children have a fundamental right to a basic, minimum education.

---

[15] Emma Dorn, et al., COVID-19 and student learning in the United States: The hurt could last a lifetime, McKinsey & Company (June 1, 2020).

79.      Access to a foundational level of literacy- provided through public education- has

an extensive historical legacy and is so central to our political and social system as to be

"implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 720-721

(1997).

80.      The Due Process Clause has also been read to recognize that certain interests are

so substantial that no process is enough to allow the government to restrict them, at least absent a

compelling state interest. id. at 719-21.  The Constitution provides a fundamental right to a basic

minimum education. See. *Gary B., et al. v. Whitmer*, et al., Nos. 18-1855/1871.      81.

81.      Defendants have deprived Plaintiffs and their children of this fundamental right in

violation of the Fourteenth Amendment to the U.S. Constitution, by effectively precluding

children from receiving a basic minimum education and their fundamental right to literacy

because (1) many students have no or limited access to the internet; (2) of those who do have

digital access their educations will be significantly impaired; and (3) truancy will run rampant.

82.      The U.S. Constitution entitles Plaintiffs to be free from any burden to a

fundamental right unless the infringement is narrowly tailored to serve a compelling state

interest.

83.      Defendants lack any compelling, or even rational, interest for burdening

Plaintiffs' children of their fundamental right to a basic minimum education. The weight of the

evidence shows that children's transmission and infection rates cannot justify school closures. Defendants further ignore that the evidence of mortality risk and severe adverse health outcome risk to children from COVID-19 disease is virtually non-existent.

84.     Risk to teachers may be managed just as risk to other essential workers is managed in New York by offering choices and providing protection. The challenges posed by the situation pale in comparison to the harm being inflicted on Plaintiffs' families through the deprivations of their constitutional rights.

85.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from shutting down the schools.

86.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Defendants' Order to shutdown the schools.

# SECOND CLAIM FOR RELIEF
## 42 U.S.C. § 1983  Violation of the Equal Protection Clause
### under the Fourteenth Amendment
### Arbitrary School Closures
### (By All Plaintiffs Against All Defendants)

87.      Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

88.      The equal protection doctrine prohibits governmental classifications that affect some groups of citizens differently than others. *Engquist v. Or. Dept. of Agric.,* 553 U.S. 591, 601 (2008) (citations omitted). The touchstone of this analysis is whether a state creates disparity between classes of individuals whose situations are arguably indistinguishable. *Ross v. Moffitt,* 417 U.S. 600, 609 (1974).

89.      In addition to the pivotal role of education in sustaining our political and cultural heritage, denial of education to some isolated group of children poses an affront to one of the goals of the Equal Protection Clause which would be the abolition of barriers presenting unreasonable obstacles to advancement on the basis of individual merit.

90.      Paradoxically, by depriving the children of any disfavored group of an education, we foreclose the means by which that group might raise the level of esteem in which it is held by the majority.

91.     Defendants' shutdown of public schools violates Plaintiffs' and their children's right to equal protection.

92.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their and or their children's constitutional rights unless Defendants are enjoined from shutting down public schools.

93.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Defendants' Orders and any associated guidance documents.

# THIRD CLAIM FOR RELIEF

### Violation of N.Y. Constitution, Art. 11, § I, ¶ 1

### Provide for the Maintenance and Support of thorough

### and efficient system of free public schools.

94.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

95.     N.Y. Constitution, Art. XI, § I, ¶ 1 provides for the Maintenance and Support of thorough and efficient system of free public schools.

96.     Here, the Defendants have failed in their obligation to provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all children.

97.     Distance learning does not satisfy the Defendants' obligation to provide Plaintiffs and those similarly situated their constitutional right to an adequate education.

98.     Plaintiffs have no adequate remedy at law and will suffer continuous, serious and irreparable harm to their state constitutional rights unless Defendants are enjoined from shutting down NYC Public Schools and providing distance learning in the City of New York.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully ask the Court to grant Plaintiffs the following relief:

A.     A declaratory judgment that the Defendants Order shutting down Public Schools is unconstitutional; and

B.     Enjoin Defendants from shutting down NYC Public Schools; and

C.     Grant a preliminary injunction enjoining the shutdown of schools; and

D.     An order requiring that Defendants issue new orders and related guidance reinstating in-person instruction in all schools without delay; and

E.      Award Plaintiffs their reasonable attorneys' fees, costs, and expenses

under applicable state and or federal law; and

F.      Any other such further relief to which Plaintiffs or which the Court

determines to be just and proper.


Dated: Syosset, New York
           November 20, 2020



**THE MERMIGIS LAW GROUP, P.C.**
*Attorneys for Plaintiffs*

/s/ James Mermigis
_____
By: James G. Mermigis, Esq.
85 Cold Spring Road, Suite 200
Syosset, NY 11791
(516) 353-0075
(516) 682-0011 Facsimile


Louis Gelormino, Esq.
Mark J. Fonte, Esq.
*Attorneys for Plaintiffs*
60 Bay Street, Suite 711
Staten Island, New York 10301